Richard M. Garbarini (RG 5496)
GARBARINI FITZGERALD P.C.
250 Park Avenue 7th Floor
New York, New York 10177
Telephone: (212) 300-5358
Facsimile: (347) 218-9478

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
YESH MUSIC, LLC, and JOHN EMANUELE, individually and on behalf of all other similarly situated copyright holders,

                Plaintiffs,

           v.

EMUSIC.COM INC.,

                Defendant.
----------------------------------------------------------x

Index No.: 17-cv-6718

**COMPLAINT AND JURY DEMAND FOR DAMAGES FOR COPYRIGHT INFRINGEMENT AND UNDERPAYMENT OF ROYALTIES**

      Plaintiffs YESH MUSIC, LLC ("YESH"), and JOHN EMANUELE ("EMANUELE")(collectively the plaintiffs) by and through their attorneys at GARBARINI FITZGERALD P.C., bring this Class Action Complaint and Jury Demand against defendant EMUSIC.COM INC. ("EMUSIC") based on defendant's infringement of plaintiffs' and the Putative Class' rights to their copyrighted musical works pursuant to the Copyright Act and Copyright Revisions Act, 17 U.S.C. §§ 101 *et seq*. (the "Copyright Act" or "Act"), and to remedy defendant's deliberate scheme to withhold royalties owed plaintiffs, and the Putative Class.

## NATURE OF THE ACTION

1. Plaintiffs YESH and EMANUELE own the publishing rights to a combined thirty (30) copyright registrations at issue here. The named plaintiffs bring this matter on behalf of themselves and a putative class comprised of independent artists seeking to remedy defendant's systematic infringement of their copyrighted recordings, and failure to pay royalties.

2. Defendant is an online music and audiobook store that operates by subscription. In exchange for a monthly subscription, eMusic users can download a fixed number of tracks to their MP3 players per month. Defendant's music streaming service is subject to Section 115 of the Act ("Section 115").

3. Pursuant to Section 115, defendant was required to serve an NOI, in the form proscribed by 37 CFR § 201.18, 30 days after making plaintiffs' and the Putative Class' recordings available, and prior to distributing them.

4. Defendant reproduced plaintiffs' and the Putative Class' recordings and otherwise made them available upon receipt, without ever serving a Notice of Intention to Obtain a Compulsory License ("NOI") for any recording. Moreover, all of plaintiffs' and the Putative Class' recordings were sold and streamed in the United States, yet defendant failed to report or pay royalties for any U.S. sales or streams since December 2015.

5. Defendant also failed, at all times, to serve any Monthly and Annual Statements of Account to conceal the infringements.

6. Defendant deprived plaintiffs and the Putative Class of publishing royalties by: (i) not paying royalties on streamed or sold recordings since December 2015; (ii) failing to provide accurate, or any, data to the artists related to sales or streams, (iii) failing to provide accurate, or any, data to the artists related to promotional streams, or incomplete streams; and, (iv) failing to

serve Monthly and Annual Statements of Account to conceal the stolen royalties.

## PARTIES

7.  At all times material hereto, plaintiff Yesh Music, LLC ("YESH") was, and is, a limited liability company organized under the laws of the State of New York, with its principal offices located at 75-10 197th Street, Flushing, New York. YESH is engaged in the business of music publishing and otherwise commercially exploiting its copyrighted sound recordings of the band *The American Dollar*. YESH is the assignee of all twenty-six (26) YESH registrations at issue here.

8.  At all times material hereto, plaintiff JOHN EMANUELE ("EMANUELE") was, and is, an individual and resident of Queens, New York. EMANUELE released three albums under the name *Zero Bedroom Apartment* which are covered by four U.S. Copyright Registrations Nos. SR 677-965, SR 778-723, SRu 1-169-865, and SRu 1-111-713.

9.  Upon information and belief, Defendant eMusic.com Inc. ("EMUSIC"), is a Delaware corporation with a place of business at 625 Broadway, 2nd Floor, New York, NY 10012.

## JURISDICTION AND VENUE

10. The jurisdiction of this Court is based upon 28 U.S.C. §§ 1331 and 1338 in that this controversy arises under the Copyright Act and Copyright Revision Act of 1976 (17 U.S.C § 101 et seq.). This action is a civil action over which this court has original jurisdiction.

11. On information and belief, a substantial part of the facts of infringement complained of herein occurs or has occurred in this district, and defendant is subject to personal jurisdiction in this district because they maintain a headquarters in this district located at 625 Broadway, 2nd Floor, New York, NY 10012.

12. Personal jurisdiction over defendant is proper in this Court on the grounds that

defendant, through its interactive web-based subscription service, caused the unlicensed sale and distribution of plaintiffs' and the Putative Class' copyrighted recordings throughout the State of New York, including within this judicial district.

13. This Court has personal jurisdiction over defendant pursuant to CPLR § 302 (New York's long-arm statute) due to its continuous and systematic business activities within New York as described below. Defendant has conducted and does conduct business within New York.

14. Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) and/or 28 U.S.C. § 1400(a).

15. Plaintiffs have the right to bring the within action pursuant to 17 U.S.C. § 501(b).

16. The copyright in every musical composition at issue was registered in the United States Copyright Office. 17 U.S.C. §§ 409-412.

17. Copies of each certificate issued by the U.S. Copyright Office to the named plaintiffs, and all applicable assignments, are annexed and incorporated hereto respectively as **Exhibit 1.**

18. Each of the plaintiffs' copyrighted compositions was registered within three months of publication, or thirty days prior to the infringement, and satisfy the registration prerequisite under 17 U.S.C. § 412(c).

## CLASS ALLEGATIONS

19. Plaintiffs bring this action on behalf of themselves and on behalf of all other similarly situated owners of the rights to copyrighted musical recordings which were reproduced and made available by defendant on or after September 4, 2014.

20. The Putative Class is comprised of, and defined, as follows:

> "All owners of mechanical distribution and reproduction rights in musical compositions subject to U.S. Copyright Registrations, which are not subject to a blanket license, and those compositions were reproduced, made available, or distributed by defendant on or after August 14, 2014."

21. Defendant's systematic failure to serve NOIs, pay royalties, or pay late fees, and its failure to serve Annual and Monthly Statements of Account, are clear indicators of defendant's intent to infringe, or at the very least, its reckless disregard of plaintiff' and the Putative Class' exclusive rights afforded by the Copyright Act.

22. This action may be properly brought and maintained as a class action because there is a well-defined community of interest in the litigation and the members of the proposed class are clearly and easily ascertainable and identifiable.

23. The Putative Class for whose benefit this action is brought is so numerous that joinder of all class members is impracticable. Plaintiffs are informed and believe that there are thousands of class members and that those class members can be readily ascertained from defendant's database files and records, and via discovery in this action.

24. The members of the Putative Class are so numerous that joinder of all members is impracticable.

25. Plaintiffs and their counsel do not anticipate any difficulties in the management of this action as a class action.

26. Plaintiffs will fairly and adequately represent the interests of the Putative Class, and are committed to vigorously prosecute this action and have retained competent counsel experienced in class action litigation.

27. Plaintiffs are class members and have no interests antagonistic to or in conflict with other Putative Class members.

28.   Defendant was statutorily obligated to maintain records of the musical compositions it distributed as well as the royalties paid. The Putative Class members can readily be located from those records, and notified of this action.

29.   Plaintiffs and all members of the Putative Class have sustained actual pecuniary loss and face irreparable harm arising out of defendant's systematic and unlawful diminution of the royalty payments with accounting for those payments as described herein.

30.   Plaintiffs have raised a viable claim of the type reasonably expected to be raised by members of the class, and will vigorously pursue those claims.

31.   If necessary, plaintiffs may seek leave of the Court to amend this Complaint to include additional class representatives to represent the class or additional claims as may be appropriate.

32.   Common questions of fact and law exist as to all members of the class that predominate over any questions affecting only individual members of the class.

33.   These common legal and factual questions, which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any class member include, without limitation, the following:

   (a)   whether defendant reproduced, and made available plaintiffs' and the Putative Class' copyrighted recordings via their subscription interactive music streaming service on or after September 4, 2014;

   (b)   whether defendant's reproduction, making available, and distribution was licensed;

   (c)   whether defendant served valid NOIs for each of the plaintiffs' and Putative Class members' recordings within 30 days of making the recordings available, and prior to distribution;

   (d)   whether defendant had an obligation to serve renewal NOIs every two-years;

   (e)   whether defendant deleted stream data to hide their infringing activity;

   (f)   whether defendant failed to serve any Monthly or Annual Statements of

      Account to conceal the infringements;

(g)  whether, from December 1. 2015 through the trial of this action, defendant failed to make any royalty payments to plaintiffs and the members of the Putative Class for the distribution of their musical compositions;

(h)  whether defendant failed to provide an accurate list of every stream of plaintiffs' and the Putative Class' musical recordings that occurred as well as failed to report free/part streams;

(i)  whether defendant owes plaintiffs and the Putative Class late fees;

(j)  the basis and method for determining and computing damages;

(k)  whether defendant's conduct was intentional as proscribed by 17 U.S.C. § 504(d); and,

(l)  whether defendant's conduct is continuing, thereby entitling plaintiffs and members of the Putative Class to injunctive or other relief.

34.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual litigation of the claims of all class members is impracticable.

35.  Every member of the class could not afford to pursue individual litigation.

36.  Individualized litigation would also present the potential for varying, contradictory, or inconsistent judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.

37.  On the other hand, the maintenance of this action as a class action presents few management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each member of the class.

38.  Plaintiffs anticipate no difficulty in the management of this action as a class action.

## **GENERAL FACTS**

39. As a general proposition, a copyright confers on the owner the exclusive right to reproduce the copyrighted composition.

40. Absent a license from the copyright owner, which the owner is free to grant or deny, reproduction of the composition by another constitutes copyright infringement.

41. When Congress enacted the Copyright Act of 1909, it was concerned that exclusivity with respect to musical compositions would give rise to "a great music monopoly." It therefore modified the principle of exclusivity in the case of nondramatic musical compositions by enacting a compulsory license provision which, in defined circumstances, imposed upon the copyright owner a license permitting the mechanical recording of the copyrighted song "on such media as a phonograph record or a piano roll."

42. Although recording technology has changed since 1909, licenses to record musical compositions on such media are often called "mechanical licenses." The within Complaint refers to the "mechanical licenses" as "publishing licenses" or "publishing rights".

43. The compulsory publishing license concept was carried forward in Section 115 of the Copyright Act of 1976 which, generally speaking, permits an entity wishing to record a copyrighted nondramatic musical Composition to do so in the absence of the copyright owner's consent in exchange for payment of a statutory royalty.

44. But the availability to defendant of compulsory publishing licenses is dependent on the strict limitations of Section 115(b)(1) of the Act which requires, in pertinent part, that "[a]ny person who wishes to obtain a compulsory license under this section shall, before or within thirty days after making, and before distributing any phonorecords of the Composition, serve notice of intention to do so on the copyright owner."

45. The mere act of reproducing plaintiffs' and the Putative Class' musical compositions, and making them available in defendant's library for 31 days without first serving an NOI, constitutes an infringement of plaintiffs' and the Putative Class' rights under 17 U.S.C. § 106(a).

46. An NOI must be served prior to being streamed (distributed).

47. Defendant must also provide Monthly and Annual Statements of Account and pay the statutorily prescribed royalties on a monthly basis.

48. Since defendant failed to pay royalties by the 20th of the month following the month in which the stream occurred, it was required to pay a late fee of 1.5% per month.

49. The content and method of service of the NOI are prescribed by statute and regulation. See 17 U.S.C. § 115(b); 37 CFR 201.18. Defendant failed to serve any NOIs.

50. The compulsory license requires searching Copyright Office records to determine the owner of each work; serving NOIs to use each and every work on a copyright owner identified in the records of the office.

51. Where the owner of the musical composition is not identified, a notice for that work must be filed with the Copyright Office itself.

52. If the compulsory license isn't used, then a voluntary negotiated license is necessary. NMPA says its licensing affiliate, the Harry Fox Agency, can accommodate the licensing of these musical compositions.

### Result of Failing to Obtain a Mechanical License

53. When defendant makes a musical composition available or distributes that composition before a publishing license is obtained, the owner(s) of the publishing rights to that musical composition (generally the artists) do not get paid. For songwriters, like plaintiffs,

whose recordings are not played on the radio, the royalties earned from streaming revenue is often substantially the largest part of their income.

54. Moreover, making available and reproducing a musical composition without a license for the publishing rights is copyright infringement under 17 U.S.C. § 501, and may not be cured after the fact by attempting to obtain a compulsory license. See Section 115 ("failure to serve or file an NOI forecloses the possibility of a compulsory license and, in the absence of a negotiated license, renders the making and distribution of phonorecords actionable as acts of infringement . . .".)

55. The August 4, 1995, United States Senate Report, *Digital Performance Right in Sound Recordings Act of 1995*, confirms:

> Of course, a digital transmission service would be liable for any infringing digital phonorecord delivery it made in the absence of a compulsory license or the authorization of the musical work copyright owner:

Senate Report No. 104-128, S. Rep. 104-128 (1995) at 27 (emphasis added).

56. The United States Senate Report further states:

> If a record company grants a license under its rights in the sound recording only, and does not grant a mechanical license under the copyright in the musical work embodied in the sound recording, **it is the transmission service's responsibility to obtain a license under the musical work copyright**.

Senate Report No. 104-128, S. Rep. 104-128 (1995) at 31(emphasis added).

## GENERAL FACTS SPECIFIC TO EACH PLAINTIFF

**YESH MUSIC, LLC**

57. YESH is the beneficial owner of, inter alia, twenty-six (26) U.S. Copyright Registrations.

58. Defendant reproduced and made YESH's twenty-six (26) copyrighted recordings

available for sale and streaming in defendant's subscription interactive streaming service in the United States sometime in or about September 2014.

59. Defendant failed to report any U.S. streams or sales of YESH's recordings since December 2015.

60. In July 2017, an independent investigator purchased and streamed every YESH recording multiple time in the United States. The recordings were streamed multiple times in August 2017.

61. Defendant reports all sales and streams on the quarter year, yet no sales or streams from July 2017 through August 2017 were reported. No royalties were paid for these sales and streams.

62. Upon information and belief, there were thousands of sales and streams of YESH's twenty-six (26) copyrighted recordings from January 2016 through June 2017 which were not reported, and no royalties paid.

63. Defendant failed to serve an NOI for every YESH recording.

64. At no time did defendant pay YESH any publishing royalties or late fees.

65. At no time did defendant serve an Annual Statement of Account on YESH.

66. At no time did defendant serve a Monthly Statement of Account on YESH.

67. Pursuant to 17 U.S.C. § 501, defendant infringed YESH's exclusive rights to all one hundred twenty-two (122) of its works. Defendant's acts of infringement were obviously intentional under 17 U.S.C. § 504(c).

**JOHN EMANUELE**

68. EMANUELE is the beneficial owner of four (4) U.S. Copyright Registrations.

69. Defendant reproduced and made EMANUELE's four (4) copyrighted recordings

available for streaming in defendant's interactive streaming service in the United States sometime in or about April 2014.

70. At all times EMANUELE was unaware his recordings were on defendant's service.

71. EMANUELE's recordings were streamed on defendant's interactive streaming service from in or about September 2014 to the date of this Complaint.

72. Defendant failed to report any U.S. streams of EMANUELE's recordings.

73. An independent investigator streamed every EMANUELE recording multiple time in the United States.

74. Defendant failed to report any U.S. streams or sales of EMANUELE's recordings since September 2015.

75. In July 2017, an independent investigator purchased and streamed every EMANUELE recording multiple time in the United States. The recordings were streamed multiple times in August 2017.

76. Defendant reports all sales and streams on the quarter year, yet no EMANUELE sales or streams from July 2017 through August 2017 were reported. No royalties were paid for these sales and streams.

77. Upon information and belief, there were thousands of sales and streams of EMANUELE's four (4) copyrighted recordings from September 2015 through June 2017 which were not reported, and no royalties paid.

78. Defendant failed to serve an NOI for any EMANUELE recording.

79. At no time did defendant pay EMANUELE any publishing royalties or late fees.

80. At no time did defendant serve an Annual Statement of Account on EMANUELE.

81. At no time did defendant serve a Monthly Statement of Account on EMANUELE.

82. Pursuant to 17 U.S.C. § 501, defendant infringed EMANUELE's exclusive rights to his three (3) copyrighted works. Defendant's acts of infringement were obviously intentional under 17 U.S.C. § 504(c).

## FACTS SPECIFIC TO DEFENDANT

83. Defendant owns and operates a subscription based music sale and streaming service which is subject to Section 115.

84. Defendant also operates a paid music locker which is subject to Section 115.

85. Defendant's subscription based interactive music sale and streaming service, and paid music locker is located on the Internet at <www.emusic.com>.

86. Defendant did not serve any NOIs before, or after, it entered the market.

87. Defendant was obligated to serve monthly royalty payments pursuant to 17 U.S.C. § 115(c)(5).

88. The statute states that "the royalty under a compulsory license shall be payable for every phonorecord made and distributed in accordance with this license," and that a phonorecord is "distributed" when the licensee "has voluntarily and permanently parted with its possession." 17 U.S.C. 115(c)(2).

89. In addition, the statute specifies that "[r]oyalty payments shall be made on or before the twentieth day of every month and shall include all royalties for the month next preceding." Id. at 115(c)(5). 17 U.S.C. 115(c)(5) further provides: "[e]ach monthly payment shall be made under oath and shall comply with requirements that the Register of Copyrights shall prescribe by regulation". See also 79 F.R. 181, pg. 56199.

90. Prior to December 2015, defendant paid royalties on the quarter year (January,

April, July, September).

91. Defendant simply stopped paying royalties in December 2015. For some plaintiffs, like EMANUELE, it stopped reporting or paying royalties in September 2015.

92. At no time has defendant served Monthly or Annual Statements of Account.

93. Defendant has never paid any late fees to plaintiffs or the Putative Class.

94. Defendant stopped all quarterly statements in 2015.

### FIRST CLAIM FOR RELIEF
### COPYRIGHT INFRINGEMENT
### (On Behalf of Plaintiffs and the
### Putative Class)

95. Plaintiff incorporates the allegations contained in the preceding paragraphs as if set forth at length here.

96. Defendant has, without a license for the publishing rights from plaintiffs or the Putative Class, reproduced, made available to the public, and distributed plaintiffs' and the Putative Class' copyrighted compositions through its interactive web-based subscription streaming and sale product and paid music locker.

97. It cannot be disputed that the plaintiffs and the Putative Class have valid, registered copyrights and own the publishing rights to their copyrighted compositions. Defendant reproduced and offered the copyrighted compositions for sale, streaming, including permanent and temporary digital download, without a license for the publishing rights, thus infringing plaintiffs' and the Putative Class' rights under Section 115 of the Copyright Act. Irreparable injury is presumed here as plaintiffs and the Putative Class have established a prima facie case of copyright infringement.

98. The making or the distribution, or both, of all copyrighted compositions without

the payment of proper royalties and late fees is actionable as acts of infringement under section 501 and fully subject to the remedies provided by sections 502 through 506 and 509.

99. Each time plaintiffs and the Putative Class were deprived of their statutory royalty entitlement, e.g., by non-payment of royalties and late fees, a distinct harm was done to plaintiffs' and the Putative Class' property interest.

100. Defendant's predatory conduct was clearly intentional within the meaning of 504(c)(2) for purposes of enhancing statutory damages. Defendant knew its actions constituted an infringement each time it failed to serve an NOI or make a royalty payment.

101. Defendant's knowledge may also be inferred from its conduct including the reckless disregard of the plaintiffs' and Putative Class' rights (rather than actual knowledge of infringement), which suffices to warrant award of the enhanced damages.

102. As a direct and proximate result of defendant's infringement, plaintiffs and the Putative Class have incurred damages, as described more fully above. Pursuant to 37 C.F.R. § 385. Plaintiffs and the Putative Class are entitled to a "per stream" statutory royalty rate of $.01 for interactive web-based streaming services like defendant's.

103. Plaintiffs and the Putative Class may also elect to recover statutory damage pursuant to 17 U.S.C. § 504(c)(2) for willful infringement of up to $150,000, but not less than $30,000, for each registration which has been infringed.

### SECOND CLAIM FOR RELIEF
### FAILURE TO PAY ROYALTIES
#### (On Behalf of Plaintiffs and the Putative Class)

104. Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set for that length herein.

105. As described herein, defendant systematically failed to pay the publishing royalties and late fees owed to plaintiffs and the Putative Class.

106. Plaintiffs and the Putative Class members have been damaged, and defendant has been unjustly enriched, in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs, on behalf of themselves and on behalf of all other persons similarly situated, respectfully prays for relief against defendant as follows:

1. certify this matter as a class action;

2. enter an order appointing plaintiffs as class representative and plaintiffs' counsel as class counsel;

3. enter judgment in favor of plaintiffs and the class;

4. enter injunctive and/or declaratory relief as is necessary to protect the interests of plaintiffs and the Class (17 U.S.C. § 502), including enjoining defendant from continued copyright infringement and violations of the relevant provisions of the Copyright Act;

5. restitution of defendant's unlawful proceeds, including defendant's gross profits;

6. award compensatory damages to plaintiffs and the Putative Class in an amount to be ascertained at trial;

7. award statutory damages to plaintiffs and the Putative Class according to proof, including but not limited to all penalties authorized by the Copyright Act (17 U.S.C. §§ 504(c)(1), 504(c)(2));

8. award reasonable attorneys' fees and costs (17 U.S.C. § 505);

9. award plaintiffs and each Putative Class member pre- and post-judgment interest to the extent allowable;

10. award plaintiffs and the Putative Class all unpaid royalties and late fees; and,

11. award such other and further relief that the Court may deem just

and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: September 4, 2017                              **GARBARINI FITZGERALD P.C.**

By: *[signature]*
Richard M. Garbarini (RG 5496)